Okay, I guess we're starting with the definition of medical emergency, and the magistrate judge said that was okay, so you're up. Put ten minutes on the clock, please. What I'm going to do is give you ten minutes for each of these grouping of issues. Great. May it please the Court, I'm Helene Krasnoff, and I represent the plaintiffs in this matter, Planned Parenthood, and Dr. Glenn Wyrick. Does that mean you have to use it all? It is important to start with this claim of medical emergency, because without a medical emergency exception, the statute fails in its entirety. In Casey, the Supreme Court considered the medical emergency exception first because it recognized if the medical emergency definition were too narrow to include all significant health risks to women, it would be required to invalidate the statute because the essential holding of Roe forbids the State to interfere with a woman's choice to undergo abortion if continuing her pregnancy would constitute a threat to her health. And that's exactly what the Idaho law does. It requires the medical emergency condition to be both sudden and unexpected. The undisputed trial testimony is that there are numerous medical conditions which may require an immediate abortion which are not both sudden and unexpected. There are numerous examples in the record, but I'll start with one. I have a question on this, and that is, I can understand from the point of view of how you would like those words to be construed, that there are items that fall outside of the definition, like ectopic pregnancies, leukemia, and a number of other things. The question I have is, if you look at the evidence in the record plus the way the district court construed it, wouldn't virtually everything fall within the definition, and then what would be the beef? Well, that's exactly our problem, is that we don't believe that that interpretation is belied by the words of the statute. But I share Judge McEwen's, and it's a more general question, and this happens in all of these cases, so it would be formative to me to know why the struggle goes on over with people's basically positions switched, and one side arguing that the statute can be construed so as to eliminate the problem, and then the other side who has the problem saying, but the statute can't be construed that way, or we don't want it construed that way, and therefore you should invalidate it. It's a very strange dynamic. You know, it's one of these things where I'm looking at the definition, which may not be perfect, and there may be as construed by the district court, and it may be that there's other evidence in the record, like from, you know, Dr. Crandall or one of your experts, that would be a little more precise or illuminating, and you would still be able to uphold the constitutionality of that section if construed that way. But as they've construed it, that is the state and now the district court, isn't it broad enough to include everything? I don't mean the words as you say, you know, just in a literal sense, but as now construed, isn't it broad enough to include your so-called objections? Well, sure, they construe it in a way that the statute doesn't say. They say it is any condition that threatens her life or health, and that is what we're saying, and the Supreme Court has said for 30 years has to be in there. And this is wholly unprecedented. No other state regulation in the country requires the condition to meet certain adjectives, and the undisputed testimony is these conditions don't, and the law requires a certification from the physician that it meets these requirements. Physicians have to be able to certify that the condition is sudden and unexpected. And for an example, with a pregnancy with an IUD in place, if someone presented with an infection, the infection, according to all three witnesses, is neither sudden, it doesn't develop immediately, yet when she comes to the emergency room, she needs an abortion, and it's not at all unexpected. When an IUD is in place, there's a risk of bacteria infecting the uterus, and it's unknown. In fact, the defendant's witness says that he would anticipate it and look for it if his patient were in this situation. The physician is required to make a certification under the Idaho law that the condition is sudden and unexpected. If he were just required to certify that there was a threat to her health, there  But that is not what the statute says. Ginsburg-McGillivray-Ford Okay. But the Attorney General now seems to be saying it is. So the question is, what is the problem with that? And the problem, as I understand it, is that if some prosecutor in some county in Idaho decided to try and prosecute somebody under the statute as you read it, rather than under the statute as they read it, we would then get a State court determination and nothing we say would necessarily be binding. Is that basically the problem? O'Connell That is basically the problem. And the Sixth Circuit in Voinovich, when they struck down a statute that banned so-called partial birth abortions, said that the determination of whether or not there's a medical emergency is fraught with uncertainty, and especially on the topic of abortion, it's going to always be. Ginsburg-McGillivray-Ford What I'm asking you is, if we were to write a certain opinion that said this is what the statute means, i.e., it means what your opponent says it means, but then it solves your problem, why wouldn't that solve the whole problem? And the reason is because it's not binding on anybody. Is that basically the problem? O'Connell Yes. The statute would still require the condition to be sudden and unexpected. Ginsburg-McGillivray-Ford And if somebody could use it, because what we say about it isn't going to bind a State court and isn't going to bind a prosecutor who isn't a party in this case.  Ginsburg-McGillivray-Ford That's the problem. Kagan And the other problem, though, is that we also have a mandate. If we can find something constitutional by construction, we're supposed to do that. O'Connell Well, I think this is in this case. Kagan So you're telling us that no matter how we construed this, it doesn't matter. I think unless we strike it down. O'Connell I think that's right. I think in Casey, and the State cites to Casey what the Third Circuit did in Casey in support. And I think actually what the Third Circuit did in Casey shows what you can't do here. Kennedy This case has a issue. It's beginning to have sort of a deja vu feeling to me. One of the first constitutional issues I was involved in when I came on the Court 10 years ago was the official English ballot proposition down in Arizona when the Supreme Court of the United States chastised us. We were facing a voter cast initiative, and the Attorney General of Arizona had said, don't worry about this. All this means is that the revised statutes and marriage certificates have to be in English. It means nothing more. The party that intervened, that had supported the proposition, said absolutely not. It means that if a person, a citizen of Arizona speaking pure Spanish comes to an MVD to get their license, and there's a bilingual person behind the counter, they cannot speak with them in their native language. And we went right beyond that and decided the issue, and the Supreme Court got very angry with us for not certifying the issue to the Supreme Court of Arizona. Is there a certification procedure in Montana? O'Connell Idaho Supreme Court has a rule of certification. The State has never asked for certification of this issue. And the district court has never asked for it. And one way to solve the problem you're talking about would be for us to ask the Supreme Court of Idaho to tell us what this definition means. I think that the – I believe it's not. I believe in the Supreme Court in Stenberg, when it considered Nebraska's ban on so-called partial birth abortion, it said there's no reason to certify unless it's fairly susceptible to that construction. Isn't that really where we are? In other words, it's sort of close but no cigar. If the statute is close, then that may make sense. But this one, you would argue, is not close, because it plainly does have this language that focuses on the condition rather than on what one ordinarily thinks about and what the other statutes do with regard to Western emergency. Yes, Your Honor. And, in fact, I think that the Casey analogy is very important, because what the Third Circuit did is it looked at each condition and said, does it meet serious risk, which is what is in the statute? Does it meet serious risk? And only because it understood it to be yes did it say that it was okay. And what we are asking this Court to do is to look at each condition and ask, is it sudden and unexpected? Can a physician who sees a minor in this situation certify that? The woman in the top emergency, for example, the pregnancy is there. The condition exists. People don't – nobody knows about it until it's discovered. But once it's discovered, it's, quote, an emergency that would be corrected because it could burst. It's an emergency before it bursts, right? So the emergency is when you know it. Ectopic pregnancy, yes, because you never know, as the district court's ruling, is you never know when it's in rupture. The problem is that the condition is not sudden at all. It's there for whatever reason. Since fertilization in an ectopic pregnancy. And, therefore, your argument is that there's no way to read that statute fairly, and, therefore, we can go forward. Yes. And cancer would be the same thing, for example. It wouldn't be a sudden onset, but there might be a situation where it would be for implicate the health of the woman at that point. Well, rupture would be a sudden event, but the condition, which is what this requires. Right. And in addition, in ectopic pregnancy, we don't even need to reach the sudden issue because rupture is completely expected because it's an area in which the pregnancy can't grow beyond a certain point. Do you want to save a little time for rebuttal on this issue? Sure. We'll give you a minute and get back down. Counsel, on this issue? Thank you, Your Honor. May it please the Court. My name is Jeremy Chu, Deputy Attorney General for the State of Idaho. Should we ask you to speak up just a little bit? Yes, sir. Sorry about that. As this Court correctly noted, the district court held that appellant's interpretation was unduly restrictive and too narrow, and that a constitutional interpretation meant that all of the appellant's emergencies fit into the definition in this case. As a matter of fact, the district court in its first opinion was convinced, convinced that the language provided an adequate standard to guide physicians. Now, if you take a look at the record, not only does Dr. Cranwell state that sudden is at the moment of diagnosis, but also the unexpected refers to the fact that physicians cannot predict exactly when a physical condition will occur. We're not going to look at doctors for a statutory interpretation, are we? So why does it matter what Dr. Crandall thought? Well, Your Honor, in this situation, it's the undue burden test, which requires that the plaintiffs, in this case, present factually that there would be substantial obstacles in a word. And logically, prior is the question of what the statute means. So we have to decide what the statute means before we decide whether there's an undue  Pardon me, ma'am? We first have to decide what the statute means before we can decide whether there's an undue burden. Yes, ma'am, you're right. You're correct. As far as the statute means, it is the State's position, as well as the district court's position, that these emergencies that were hypothetical situations that the appellant has brought up do fit within the statute. But to be precisely correct, that is the position of the current Attorney General of Idaho, right? Yes, sir. And the decision of the district court is utterly unbinding on any Montana State court? Idaho State court. Well, if it may be that there's an argument as to whether or not it would or would not be binding into a State court just because this is a constitutional issue that you're deciding. And, Your Honor, if you come up with an opinion. First, we're deciding a statutory issue, and that is not binding. Yes, Your Honor. The difficulty I have is that even if I go into the doctor's testimony as, you know, you could argue that in some sense it's like looking at a dictionary or a medical dictionary. It's just a doctor talking like a medical dictionary, like we'd look at English dictionaries for how we understand words. And I'll tell you, my inclination is to try to find something constitutional if I can. Right. The difficulty here is that as these doctors explain it, frankly, it doesn't match up with the language. So you, in a sense, come in and tell us really anything that would affect a woman's health kind of is bundled up in these words. Yes, Your Honor. And if somehow that were the language, I guess we wouldn't even be here. We'd say, great. You and Planned Parenthood would agree. But the difficulty is that every judge that then applies this, including ourselves, we have to actually look at the language. And the district court's interpretation seemed to me to even be off of an English language interpretation offered by the doctors. Sudden means moment of diagnosis. I don't see anywhere we could define that. Maybe you can help me. I agree, Your Honor. And if you'd like to focus on the construction of the language rather than the facts in this case, let's take a look at what an emergency is defined under. In Webster's, it's an unexpected situation that requires prompt action. Unexpected. In Black's, it's sudden and unexpected happening. We have those words in the statute, Your Honor. And in Stedman's medical dictionary, it includes suddenly and unexpectedly. These are words that an ordinary person would be able to understand, and a physician in that situation will know. As the Supreme Court held in or determined in Casey, that when possible, this court should read the definition of the term as intended by the legislature to ensure compliance with the abortion regulations, not in any way to ensure that these – this definition does not pose a significant threat to the life or health of a woman. And that's exactly the way the Idaho legislature intended it. Casey said that statutes should be construed to sustain their constitutionality and that a court is not to strike down a law as unconstitutional on a basis of a worst-case scenario that may never occur. And when you're confronted with a facial challenge, Your Honor, you're right. The first consideration is whether or not this definition is constitutional or whether or not it's constitutional. In the hypothetical. Now let's take a case of a woman with that condition. How does that fit within your construction of something that's sudden and unexpected? The way that the record shows that it would fit and the way that the district court determined that that's the way it would fit was based on Cranwell's testimony that sudden is at the moment a diagnosis. Unexpected. That's meaningless. I mean, a diagnosis happens when it happens. So every diagnosis is sudden? Well, Your Honor, in this case, it is. It's sudden and unexpected because that's what makes an emergency. If we were to replace this definition of a sudden and unexpected, it would be a medical emergency. And you're getting the words out of the statute. Pardon me, ma'am? Reading out of the statute the phrase sudden and unexpected as modifiers to physical  You're taking out sudden and unexpected. An emergency, physical condition, is the way that I would interpret it. Well, but medical emergency means a sudden and unexpected physical condition, which so complicates, I'm leaving out some words, the medical condition of the pregnant minor to necessitate the immediate causing or performing of an abortion. The way you are reading the statute, you could leave out the words sudden and unexpected and come to exactly the same conclusion, right? Well, ma'am, the way I'm reading the statute, sudden and unexpected to me means an emergency. But if we read it in context, later on in the statute, it says that there has to be a risk, create a serious risk of immediate, substantial and irreversible impairment of a major physical bodily function, which in this case would cover Judge McEwen's hypothetical of what happens in that particular situation. Is there an immediate risk? And that's a judgment call by the doctor in this case. But you're still not answering my question, which on your reading of the statute. Yes, ma'am. If the words sudden and unexpected were left out, would the statute mean anything different than it means the way you're reading it? I don't believe so, ma'am. Therefore, I can't mean that because we read statutes not to have superfluous language. So it must mean something else. Well, the way I read the statute, I guess I'm not really connecting here with respect to what you're asking, because I read it as sudden and unexpected as meaning an emergency. I mean, it's one of these odd things where I can imagine the legislature taking the word emergency and then looking, as you said, into the dictionary and they see sudden and unexpected. So then they insert that into the statute. And so in a way, it's almost like saying emergency means emergency. Well, they didn't want to use emergency to, right. We're kind of in an odd thing. Emergency means emergency and then, which is a physical condition. Right. If we construe the language the way that the legislature intended it, it would be an emergency. A sudden and unexpected would mean an emergency.  And I don't know if that's the same word to define, you know, the term that you already have, but if you look at the dictionary, I mean, if it's a word Mary used, an emergency is sudden and unexpected. Sorry. Well, what's sudden and unexpected is the need to act, not the condition. That's the problem. They're using this to modify the word condition. And that's where you're running into a problem. Whether or not that it's an emergency condition. And it seems to me what you're the position the State is taking rewrites this phrase to say a physical condition, comma, requiring sudden and at that moment unexpected treatment, comma, et cetera. Right. And you're sort of reversing it. Well, I think that's a narrow construction of the statute, the one that the district court kind of rejected. That was, I believe, what the appellants were arguing all along. And we – I thought that – I think the district court was right that a sudden and unexpected, if you read it, a reasonable term for personality. What you're really saying is that what this definition really says is a life-threatening condition requiring the performance of an abortion which needs immediate attention. Yes. Yes, sir. That's what you say this phrase means. Yes, sir. And that's what the rest of the statute says, because it says, and so complicates the medical condition of the pregnant minor as to necessitate the immediate causing or performing of an abortion. That encompasses the emergency idea. The other thing is something additional, and it creates the problems which we are pointing. Right. But if there is a reasonable interpretation of this, then you see there's a fairly easy fix. The legislature can go and take these three words out, and we're probably okay. You're out of time on this issue. Thank you for your argument. Thank you. Did you want to rebut on this issue? I don't. Okay. The next issue up is guardian ad litem, and I think we're in the same position as we were on the first. Ms. Krasnoff? Krasnoff? Excuse me? As our briefing delineates, the Idaho law provides only a guardian ad litem, who need not be a lawyer, to assist a minor in seeking a judicial bypass. Our claim is that a minor needs counsel who will represent her interest, who is a lawyer, in order to have an effective opportunity to bypass parental consent. We believe that neither a guardian ad litem is good enough, nor a non-lawyer is good enough, and I'll take those in turner. The guardian ad litem is not good enough because a guardian ad litem has a statutory and legal duty to present what it believes are the best interests of the minors. But the minor seeking a judicial bypass has a constitutional right to present what she believes is in her best interests and to present evidence of her own maturity. The guardian ad litem, thus, denies her of her ability to represent her maturity. And the Seventh Circuit in Pearson, when they struck down a law that didn't have counsel, said the State doesn't extend minors the privilege of going to court. But to determine their maturity, rather, the minors have a constitutional right to try and establish their own maturity. And this is even worse because the guardian ad litem could actually impede her ability to present her case because they could argue for a position that she doesn't want. They could argue the abortion is not in her best interests. Kennedy. Do you think that was the intention of this provision? I don't know what the intention was. I know that most other State's parental involvement laws specifically allow for court-appointed counsel. And the minor is to be advised when she files her petition that she has a right to court-appointed counsel and counsel will be provided for her. Here's one difficulty I'm having with your position on this. Let me just express it and you can respond to it. Even if this provision required the appointment of a lawyer, there's no guarantee that the lawyer would not go in and say, this person is not mature enough and this is going to hurt her and it's not good for her. If the lawyer were acting as a guardian ad litem, that is true. If the lawyer were acting as counsel for the minor, their obligation is to represent the interests of the client. The provision now requires the appointment of the guardian. Yes. Just imagine hypothetically that's wiped out and it required the appointment of a lawyer. Is there any guarantee that that lawyer would not be subject to the same kind of problems you're talking about with the guardian? Yeah. The Idaho rules of professional responsibility require that counsel for a client present, advocate zealously for the position of their client. You know, criminal defense lawyers all the time are told by capital defendants not to present evidence in mitigation. The last thing, you know, some of them say the last thing in the world I want to do is spend my life on death row. You keep your mouth shut, let the State put on their aggravation evidence and let me get the death penalty and we can contest it later on appeal if we want to. And all the time, criminal defense lawyers, especially after the Supreme Court's decision in Wiggins this last term, are obligated professionally to say I'm not going to do that. I'm not going to abide by your wishes. I'm going to do what I think is in your long-term best interest. What's to prevent an attorney in this situation from doing the same thing? Well, I don't dispute that they have a duty of candor to the court and that they can't hide facts from the court. In fact, the way a judicial bypass works, the judge may ask questions and both the minor and counsel are obligated to answer them honestly. But the problem is somewhat exacerbated by the fact that you're dealing with a minor from the point of view of the lawyer. So the question of how you represent the interests of a minor is not self-evident in the sense that the lawyer might conceive their obligation to be to represent her interests as he sees her interests rather than she sees her interests. But her interests are constitutionally defined. Her interest is that she has an ability to go present her case and try and make the case to an independent decision-maker that she is mature and that an abortion is in her best interest. That's what Bilagi requires. I mean, that's really the crux between a guardian ad litem who in many respects acts as a, quote, friend of the court and in the best of the state's decision what's in the best interest of the child, and a lawyer is an advocate. And that's why a guardian ad litem really can't serve the same purpose as an advocate, can they? Yes. The minor. I think there's an inherent conflict is what I'm concerned about with the guardian ad litem. So are we. I think that the Bilagi and its progeny all the way through this Court repeated over and over again in the LaWall cases is that the minor has this ability to influence her own decision if she meets this criteria. A minor who's pregnant who comes in to see a lawyer, assuming there were a lawyer requirement, she comes from a loving, supportive, even progressive home. There's no parental abuse of any kind. There's not the slightest indication of incest. She's gotten pregnant because of consensual sex with her boyfriend. There's no medical emergency of any kind. Her parents are well-educated, thoughtful, decent, caring people. And the attorney concludes that this is not an instance in which judicial bypass is appropriate. The same thing happens, doesn't it? No. The Supreme Court says it can't happen. The Supreme Court says that the minor – it doesn't matter the reasons she doesn't want to tell her parents. If she is mature, maturity does not spring up at age 18, the Supreme Court said in Bilagi. If she is mature, it doesn't matter if her parents would want her to have the abortion. She's entitled. Judge Hawkins' hypothetical is then he doesn't take the case and sends her to another lawyer? Well, actually, there's a Tennessee ethics opinion, which I was just rereading, which is attached to one of our briefs, which suggests that they might not be able to send it to another lawyer if they disagreed, actually. But I don't know. It would be a matter of Idaho ethics law, whether or not the attorney could do that or not. But it doesn't matter because the minor's right is to seek this. And remember, the standard in Bilagi is if the abortion is in her best interest. It is not whether or not telling her parents is in her best interest. That's not the constitutional determination for the judge in Bilagi. And it – I mean, it strikes me, too, that whether it's in her best interest ultimately, you know, the court is going to make the legal judgment here of maturity and what goes on. So it's not the attorney's job to make that judgment. No. It's the minor's – as the Seventh Circuit says in Pearson, it's her constitutional right to go and present and try and make that case. And as our evidence and other courts have recognized, a minor or anybody untrained in the law is not in a position to deal with this process. And there's lots of things in the Idaho statute. Kagan. Kagan. In terms of case law, you said that most State statutes do have a provision for appointed counsel and that Pearson holds that it's required. Is there any other case law holding that it's required? There's the Orvie Noles case, which is cited by the State, in which the – a district court certified a question to the Nebraska Supreme Court of whether – what the statute required. And the statute – the Supreme Court said the statute requires a guardian ad litem whose duties are not coextensive with counsel. And when it got back to the district court, the district court said, well, then that's not good enough, unconstitutional. It's a very brief opinion. It's attached to our brief. It's an unpublished decision. Yeah. I thought each side characterized the result of that pretty differently, so I was trying to trace that through. And then there is a district court case out of Arizona, Planned Parenthood of Southern Arizona v. Neely, which dealt with a counsel issue that was a little bit different that's not really related to our claims here. There is no other challenge that's been brought that I'm aware of to a counsel provision that anyone has ruled on.  Aida. Thank you, Your Honor. In this case, the plaintiff presented evidence of the benefits of an attorney, but there was no evidence as to whether or not a guardian would be an effective method of – would not be effective in terms of the judicial bypass. And that's really what the standard is today. But let me ask you on that. I think a guardian in many instances would be great, you know, and they might do just – you know, it's not that they couldn't do a good job. Yes, Your Honor. Although not being a lawyer in some cases may be, of course, a disability. The difficulty I have is that the guardian has a different relationship to the young woman than the lawyer does. Yes, Your Honor. And so if you would address for me the potential conflict where by factual circumstance the young woman is quite mature, capable, clear-headed, and wants to exercise her constitutional right, and the guardian feels, you know, good family, nice home, good high school, you know, this – for a lot of reasons, it's really not in her best interest in the long run. Don't you have an inherent conflict in the role of an attorney versus a guardian? Well, I have three responses to that. And the first one is the statute in and of itself states that the guardian must act to fulfill the purpose of the statute, and it also must protect the rights of the minor. And those rights are to go through this judicial process, bypass process. Secondly – To go through the process, but it's not necessarily – he could have a different view than she does about what her rights are under the statute. In other words, she might maintain that I'm mature enough under the statute to make my own decision, and he might believe she isn't. So therefore, she doesn't have her – if the facts are as he believes them, then she doesn't have a right under the statute. So that's – it's circular. It doesn't get you to the question of whether she has the right to present her view of her rights as opposed to his view of her rights. Well, Your Honor, you said that under the statute, even if the guardian doesn't believe that it's in the child's best interest or the child's not mature enough, they still have to act to fulfill the purpose of that statute. And that's to allow – And if that's – Can it add on to the guardian ad litem statutes? The guardian – to the extent that the guardian ad litem is not consistent with our – with the provision in Chapter 18, then Chapter 18 would control it because it's more specific. I'm having a hard time with what you're saying. The statute is not a unitary rule. The statute is a more complex than that. In other words, it says you have a right to an abortion except if X and Y. Right. So therefore, depending on what you think about X and Y, it depends whether she has a right. So why doesn't it fulfill the purposes of the statute if the guardian ad litem believes that she does not have a right to an abortion because she isn't mature to forward that position? Well, Your Honor, if I may leave just a couple of responses. First of all, we haven't really made that determination in the trial court because there was no facts or no evidence to present that this is exactly what the guardian is going to do. Remember, we can't – But a guardian ad litem is not a concept that was invented for the statute. It has a long and noble history, right? And there is certainly law about what a guardian ad litem is in general. Yes, ma'am. But a guardian ad litem in this particular instance must comply with the statute in this particular instance, which means that she must act to fulfill the purpose of that statute. Let me – now that you're talking, you've kind of sparked another question that you can help me with. Did I understand from your briefs that the way you put the whole scheme together that you've essentially conceded that the guardian ad litem would have to be a lawyer? Well, the statute says that the guardian ad litem must be a lawyer. Okay. Unless – In situations where the district court determined that in some cases where there's – when counties, in fact, in Idaho don't have attorneys, the court – I'm sorry. So – but are you saying that by virtue of the statute it must be a lawyer unless there's not one available? Yes, ma'am. That even when there isn't one available, Your Honor, the statute does state that the court must help that petitioner, that child out in fulfilling her petition and helping her go through that process. Okay. So now let's – if the person has to be a lawyer, and Idaho says fine by us if you appoint a lawyer who is a guardian – a guardian ad litem who is a lawyer. Right. Why not just appoint a lawyer? In other words, now are we in a distinction without a difference? Because if you say the guardian ad litem doesn't have any responsibilities that are different from an attorney – in other words, they don't take on the normal sort of friends patriae role of a guardian ad litem that we think of, say, in dependency hearings and that sort of thing – does the whole thing collapse in what you're saying as you construe the statute that basically they get a lawyer? No, Your Honor. What we're saying is – I mean, the way that it's interpreted is if the lawyer is a guardian ad litem or becomes a guardian ad litem, they're going to take off the hat, their lawyer hat, and they're going to become a guardian ad litem. But then you went on to say that given this particular statute, there was no difference. With respect to? I thought you were wearing a guardian ad litem. We went through three points in the statute and when we asked, but what if those points of complying with the statute somehow collided with your role as guardian ad litem? You said, no, the statute controls over general guardian ad litem roles. It does. So then my question is, well, if that's true, is this just a moniker with no difference and that the person basically should just get a lawyer and that there's really no difference? I guess I'm trying to understand why the insistence on the guardian ad litem, if it's a distinction without a difference, but maybe there is a difference. Well, I think the reason why that the State preferred a guardian rather than a lawyer is because the Supreme Court in Bilotti recognized that for children, they're particularly vulnerable and they have difficulties making mature decisions, which is the reason why a guardian ad litem best fits that role than an attorney. Hypothetically speaking, you have a stubborn 16-year-old or 14- or 12-year-old that, for a hypothetical situation, that doesn't want to tell their parents, that doesn't want to go through this judicial bypass, that a guardian would be able to try to talk to her about it, would be able to guide her, that ultimately that decision will be made by the child. A guardian is better suited to or has the necessary flexibility in this case to talk to a child and say, well, you know. And the lawyer can? Well, a lawyer has to finally abide. In the end, will abide by, I mean, we'll talk about it, or the lawyer will abide by that decision or the mindless decision and then the … To be maybe slightly untidy, you're speaking with forked tongue because you're saying that there is no difference because the guardian ad litem ultimately has to represent her interest. And now you're saying, but the difference between the guardian ad litem and the lawyer is that the lawyer has to represent her interest and the guardian doesn't. Well, the guardian ad litem during a hearing situation, for instance, would be able to say, you know, would be able to communicate better with the judge. I mean, there's more flexibility in that case. I.e. by saying, I don't agree with her position. Well, in that situation, if there is a case, whether or not that there might be a possibility that the judge or that the guardian would say that. Would you say that? I don't know if that's a hypothetical or – I mean, because there was no evidence in that case. If he can say that, there's no point to having this in the statute, which is what Judge McEwen was saying. If he can say that, then it appears that perhaps she isn't having her constitutional interest represented. Well, the constitutional interest in this case, Your Honor, is whether or not it's effective. And a guardian ad litem is truly effective in this case. The case you say that the nub of the difference is that the guardian is in a better position to override the decision of the minor as opposed to a lawyer. I don't think there will be an overriding decision in this case. And the reason why – But she just told us. Well, I think that if there's a hearing situation, a judge will be able to ask a guardian about her opinion. A lawyer representing a minor in this situation could never go in ex parte to the judge and say, Judge, I really think it's against this child's best interest to have this procedure. That's a possibility, isn't it? That is a possibility. Could a lawyer do that? The lawyer could not do that. So the guardian owes a duty both to the court and to the more abstract interest principle that's different from the direct duty to the client that a lawyer owes. There is a difference. You're right. We just need to decide whether it's too far this way to be constitutional or not. Well, you're right, Your Honor. There is the standard, and I keep going back, and I apologize if I'm confusing this Court, but the standard is whether or not it's effective. There's no Supreme Court case that says that a counsel must be appointed to represent the child in these proceedings. And whether or not that guardian is going to be effective in this case, it's the guardian is acting to protect the interests of the child. It's in the child's best interest to use that guardian to go through that process. Is there any history at all about why this selection was made, why they decided to make it a guardian ad litem rather than a lawyer? Because the consideration was in Bellotti, the Supreme Court had recognized that in children, children have difficulties making mature decisions, and children are particularly vulnerable, which is the reason why guardian ad litems were selected rather than attorneys in this case. But there were attorney guardian ad litems. Therefore, these guardians will be able to go through, will know the process, will know the petitioning process. But it's the whole system is set up so that the judge is the person who is protecting the interests of the child, and the representative, it's because the child is not mature that they need someone to talk to the judge about her perception of her interests. But then that isn't necessarily going to govern, and that's why you have the judge there. Well, there's – in this case, we have two people protecting the interests of the children rather than one. And nobody protecting her perception of her interests. Pardon me? And nobody protecting her perception of her interests. Her perception of her interests, as recognized by the Supreme Court, is most likely not – sometimes incorrect. So who would be present at the bypass hearing, just as a practical matter? As a practical matter, it would be the judge, the guardian, and the child, and whoever the judge wanted, whoever else the judge wanted. Thank you. Okay. Did you want to rebut this point? Okay. I guess mostly I want to say I'm still confused about what the State's position is here. I felt like that was all over the map. Judge McEwen was asking, so it always has to be a lawyer, or it doesn't have to be a lawyer. Counsel said they have to act – they have to take off their hat as a guardian, but they don't. There's nothing in the record to suggest that. In fact, the district court said that they're going to act the exact same as they will under the Idaho Child Protective Act. And under the Child Protective Act, all the sections relating to minors say there's a guardian ad litem, and the court has separate counsel for the minor. Petitions must be served on the guardian ad litem and counsel for the minor. And in fact, some statutes – actually, the statute at issue in Bilotti allowed for both the appointment of counsel and a guardian.  And I don't know if that's true, because the minor needs counsel because of her – Kagan Guardian ad litem basically means a parent for the purposes of litigation. So basically, she now has two parents. She has the parent that she's not telling, but except that that parent has no recourse over her, which is not the same as a parent that she would fear a consequence from notifying. But, yes, there's nothing in the statute or ever in the history of this or that I know of in legislative history, I just want to be clear, that says that a guardian would not have to act as they are duty-bound in all cases to present what they believe is the minor's best interest. There's never been anything. Kagan What about a lawyer? I mean, the more interesting problem, and there was some ethics rule cited in the government's brief, which suggests that a lawyer might be under the same strictures, even as a representative. I think that Judge Hopkins was asking a little bit about that, which I think that there is – as I said, there's a duty of candor. The lawyer is bound to not hide any facts, and in a bypass hearing, the judge can ask whatever they want. But in terms of accessing the court and presenting her case, a minor needs counsel. A minor is just not in a position, in fact, as some of these courts have said, an adult with no legal training is not in a position to go to court and to present this. And there's other issues in the bypass, which we raised in our briefing, but that make this even more essential, the time frames, the venue. They need help to access the court system. They need someone on their side. They need someone familiar with the law and familiar and willing to present their case. Thank you. We'll turn to the notification issue, and I believe you're first up on that. Issues, I should say. Thank you, Your Honors. With respect to the post-medical emergency abortion notification issue, if we can put this issue in perspective, there's no possibility of a third-person veto. A child has just been through an emergency abortion because it risked her life or death or permanent risk, permanent injury. And there's no evidence of a chilling effect in this case because in a medical emergency situation, that choice reasonably can be taken away from that minor. So we consider these facts with all or consider these issues with respect to Dr. Fredrickson's plaintiff's own witness in this case that stated that a minor could refuse to consent to an emergency abortion and that a physician may seek an emergency court order to perform an abortion to save the life of a minor, just like in any other jurisdiction. In Idaho, we can do that also. What we're dealing here with in this case or in this particular issue is really two issues to be addressed, the issue of chilling, whether or not it will chill a minor's decision to go through an abortion, and the issue of confidentiality. And first and foremost, with respect to the issue of chilling, this decision is – will hardly be an addition – a decision at all. It is a medical emergency, a medical emergency whereby the child will have to, if it's – if the physician determines that it's in the risk of her life, if it's risking her life or serious injury, that will have to submit to this abortion. There is no chilling effect. Number two, with respect to confidentiality. Well, but there might be a chilling effect, a quite frightening one, actually, on children even going to doctors and minors going to doctors when they are – recognize something that could lead to an emergency if they know that if there's an emergency abortion, their parents are going to find out. Well, Your Honor, the testimony in the record, Plaintiff's own witnesses stated the only record – or the only facts that we have in the record is that these children ultimately always come for care, come back for care. And I believe that was in Dr. Frederickson's testimony, again, in the Excerpt of Record No. 2, our Defendant's Excerpt of Record on page 2, that Dr. Frederickson states that in a medical emergency, children always come back for treatment. Secondly, Your Honor, she also stated that in the end, she testified that in the end, the parents will always find out in this situation. And if we are to limit this consideration based upon what underlying – what the underlying record states, then that's the only testimony that we pretty much have. With respect to confidentiality, Your Honor, we have a situation where we have a substantial interest, the best interest of the child at heart. This is truly one. If we are to talk about hypotheticals in this case, it is more likely that in an emergency situation, children will need aftercare, aftermedical care. And I – But interestingly enough, the statute is not written that way. In other words, it doesn't say, if substantial aftercare will be needed, then the parent shall be notified. It says, if there was an emergency abortion, the parent shall be notified. And it doesn't seem that there's any – sometimes there will be an abortion because there's an emergency, but that will be the end of it. It will be just the same as any other abortion, no? Well, Your Honor, it would be – if it's a medical emergency, more likely than not, she will need it. That's more likely than not. What I'm saying is the statute is not written to take account of the more likely than not. It doesn't say, if there is aftercare needed, then you need to notify the parent. It says, whenever there's an emergency, including in the nots, I mean, ones that aren't more likely, but in the nots, you still have to notify the parent. You're right, Your Honor. That's what it says. Okay. And therefore, it's not very well adapted to the interest that you're asserting. You're asking if it's narrowly tailored in this case to protect the confidentiality of the child. Right. And what we have to put – again, Your Honor, in this situation, the confidentiality provision is to protect the child from – from seeking an abortion, which she's already done, or the threat of a third-person veto, which there is no threat. And third, Your Honor, with respect to confidentiality, we submit that – or I believe that it is narrowly tailored to fit this particular instance, because we're not going to know whether or not – you're right. We're not going to know whether or not a child is going to – But the doctor will know. The doctor would certainly know. Well, a doctor – the doctor won't need to make that decision, because the – because the State has basically said that – that the parent should know, and the parent will make that decision whether or not to protect the child. That's a very strange view of medical care. You're right. Scratch that. You're right. Scratch that. But in terms of narrowness, Your Honor, if that's the particular interest that you're concerned with, it is narrowly tailored in this case, because if you think about it, it's an emergency medical situation. It's not in all cases. And if you're thinking that in this situation, you know, it's not narrowly tailored because some of the people who are going through these emergency abortions won't need aftercare, there's simply no facts to that. Number one, no facts. Number two, remember, Your Honor, this is a facial challenge. They need to prove through facts that this is a substantial obstacle with a large number or large fraction of cases, and there's no evidences to that. Did you want to turn to the criminal reporting requirement? We could if we're done with this situation or this particular instance. Okay. Your Honor, in this criminal situation, you also have the two concerns in this case. First of all, is it true that the Child Protective Act, the other statute, I think that's what it's called, requires the same reporting anyway? Yes, ma'am. It is. It is true. It requires reporting of any – but the language used in that statute is abuse, and the language used here is any criminal activity. Right. Well – So would it include statutory rape? Yes, it would. How do we know that? Pardon me? How do we know that the other statute would include statutory rape? The statute, an abuse, when you're talking about abusing children, a statutory rape would fit under abuse. Is there any law like that? Is that in the criminal statutes of Idaho that that – and I know in some States abuse includes statutory rape. Is that true in Idaho under the criminal law? You know, I don't want to represent that as to whether or not that's true or not. But I'm pretty sure that that's true. It is correct, isn't it, under Idaho law that it's a criminal offense to have sex with any woman under the age of 18? Yes. Yes, sir. So wouldn't that mean that 99 percent of people applying for this procedure, there would be a requirement of reporting? Yes, sir. That would be true. But if the concern here is with respect to the chilling effect, I'm a 13- or 16-year-old girl, and somebody tells me that there's a possibility, a possibility of my boyfriend being investigated versus a definite that my boyfriend will be investigated, I submit that it's the same kind of chilling effect. That person's going to think twice. What you're talking about – How – this is – I'm just trying to figure out how this operates. Okay. How – the judge has to refer the fact that she was – had sex with somebody and that that's a crime for anybody to have had sex with her under any circumstances. But how does he know who? Is there anything in this procedure that requires her to say who the father is? No. None at all, Your Honor, if you take a look at the statute. So how – so they report that somebody had sex with her, and then what? Does she – does the investigation mean that then they can talk to her and at that point demand to know who the father is? What if she says, I don't want to tell you? It would be an appropriate investigation in that case, Your Honor, which would mean it could either be reported to child services. Depending on the circumstance, it could be reported to law enforcement. It's up to the discretion of the court where it goes to. Right. And then whoever the investigator is comes to her and says, I want to know who the father was. Does this statute protect her from having to say? Does it protect her as to whether or not – well, I don't think – I don't think the statute will protect her. So in other words, as in any other investigation, the State is entitled to her as a witness and she can't simply say, I don't want to say. Right. Well, Your Honor, you're stating that, you know, this child could be compelled to – to do. Well, that's what I'm trying to find out. Because if she can't be, then the investigation is not going to go anyplace and she really can – all she has to be told is don't tell them and that will be the end of it. Then – But I'm not sure that that's the way, quote, investigations operate. Well, I mean, if she's not willing to cooperate with proper authorities, with legal – or with the enforcement, then we're not going to – we're not going to torture her. We're not going to make her tell people. Well, the judge says, forget – forget the investigation. You're in the bypass hearing. And the judge says, look, I'm going to grant – you know, I find that she meets the statutory criteria and that the abortion may go forward. But I'd like to ask you, Ms. So-and-so, you know, was – you know, who was this with? Was this boyfriend? Was it with a relative? And you can say, well, she doesn't have to answer. She doesn't have to answer. It has nothing to do with maturity or best interest. Is she in a criminal – is she at any criminal risk for answering? No. I suppose you could give her immunity and compel her testimony, right? Well, there would be no reason for a judge to ask her. I understand that, but – Well, when you say there's no reason, no, I can imagine a lot of county judges saying, look, I feel that this is a significant issue here. You're under 18. There's been a violation of the law, and I'd like to refer this for investigation. And in doing that, I'd like to see what the facts are. I can – I can imagine a number of judges having that concern because the crime has been committed, and the other – you know, it's the victim, if you will, is in the courtroom. I understand. And if that judge – if that particular judge based their – based his or her denial of the bypass because of that, then that's appealable. No, but I said, no, you get the abortion. I just want to know who because – I mean, I'm granting the abortion. I just want to know who because I feel a crime has been committed, and we ought to refer that for investigation. Yes. Yes, Your Honor. It might be fairly chilling at this point, since, you know, the lawyer would have to advise her that this is a risk of going to court, wouldn't it? I understand. I understand the question. However, the statute in itself provides very specific roadmap as to exactly what the judge may and may not ask. And those questions have to be – have to deal with emotional development, have to deal with maturity, intellect, understanding the minor, the nature of the abortion, even relationship between parents and minor. The petition doesn't have to say who the father is. No, ma'am. Okay. Okay. Thank you. Thank you for your response on this point, counsel. I'm going to start backwards because it's most fresh in my mind, the criminal reporting. The State has completely misrepresented what the statute says. First of all, the judge can ask whatever they want or it says or anything else that they want to ask. Where is that? Any other evidence the court may find relevant in determining whether the minor should be granted the right to self-consent. Now, one could argue that the name of the father is or isn't, but one might ask his age. You're not challenging that, but the judge can ask that, he can ask that. And she has to answer, which is my second point. In – there's no number section. So in little 4, a little bit below at the bottom of the reporting requirement, it actually does immunize her. You would ask that question. Idaho has two criminal – there are two crimes that have been committed. Fornication, which is unmarried people of any age having sex, is a misdemeanor and she would also be guilty of that. But she's immunized by the statute here. And then there's statutory rape, which applies to her partner regardless of age or consent any time that sex has occurred with a minor. And there's no immunity for that. Well, there's – she doesn't need immunity because she's only – she's the victim. And she's not committed any crime. But interestingly enough, the statute says that she has to answer if the judge asks. It says she can't be prosecuted for any perjury, falseware, contempt or answering and failing to answer. Or in producing or failing to produce evidence that's required by the court. Oh, I see. So she can be prosecuted for failing or – I see. Yes. I'm sorry, I didn't read the whole thing. But she was – Because my second question comes down to the chilling. Well, I mean, I'm just trying to understand if on this criminal reporting requirement, you know, one could say, well, if the judge is going to make the decision based on the evidence and she gets the abortion, then she does what she wants. No, she does not. She's guaranteed by Bellotti a confidential procedure. And the evidence in the court found that there's no way you could have an investigation. This is what I'm trying to understand. This is my difficulty. The possibility that he will ask her who the father is exists anyway. If we cross out this whole reporting provision, it's still there. The title – are you going to ask about the Title 16? I'm sorry? I wanted to explain the difference between Title 16. The same requirement does not exist. No, but I'm not talking about that. Okay. I'm saying that the – as you say, it's a little hard to talk because there are no numbers, but in Little III, the provision that says that he can ask for evidence is in Little III, not in Little IV, right? Yes. All right. And you're not challenging that? No, no. No? Where is it? No, we are not challenging that. Correct. Okay. So then we're in this paragraph in Little IV under 2, which is the one about the reporting. And it's not the one that's creating the chilling effect, right? The chill being that she may be asked who the father is. No, the report is what's making the chill, not that she's being asked. She can be asked if there's no mandatory report. It's the mandatory report because the report will both breach her confidentiality I mean, the referral to investigation. Yes. That's the – Yes. The district court said was unconstitutional. Yes. For two reasons. Both because what minor would go to court knowing that her consensual sexual partner, her 17-year-old boyfriend, would be subject to a criminal investigation? And also that investigation, he said there is no way anyone can investigate or prosecute without breaching her confidentiality. So the – it's only the report to law enforcement. And that's a very important point that I also believe the State is wrong about the Title 16 child abuse reporting requirement. They say there's the same requirement anyway, this broad requirement. And you were hinting at this, but Title 16 is child abuse at the hand of a parent or guardian. It is not criminal reporting. It is only criminal reporting that we have challenged here because a minor cannot go to court and not trigger it. Her presence triggers the report because she's had sex. To read – I just want to be clear. To read the reporting statute the way the State is now advocating that you read it, that sexual abuse includes rape outside of the family, just two consensual teens having sex, besides the logistic problems, the logistic problems are that if a mother knew that her daughter was having sex, she would be required to turn herself in. If a mother took her daughter for birth control, her 17-year-old daughter to a clinic, the clinic would be required to turn the parent in. And the reporting is so broad. It's any person for any reason who reasonably believes the minor has, under this interpretation, any sexual activity. So a minor's friends would be obligated to turn themselves in. Besides the logistical issues, this raises a host of constitutional problems. The State may believe that minors have diminished privacy rights, but their rights are not so diminished that they can't seek any counseling or speak to anybody about their sexual activity. Sotomayor, would you say again which section this is? Heidepfer Code section 16-1619 is the reporting requirement. It's not in here. It's the reporting requirement that relates to child abuse reporting. And the State's argument is, so what? There's a criminal reporting requirement. There's no burden because the judge has the same requirement already under 16-1619. I'm just wondering why you think that 1619, I guess there's another one too, 1605, deals with parental. The policy statement of Title 16 in Idaho Code 16-1601 says it concerns, quote, preserving, protecting, enhancing, and reuniting the family. And when that code section discusses jurisdiction, it conclures that it can't be used by a neighbor. There wouldn't have to be a report. I mean, if a physician knew that a child was being raped by her neighbor, there wouldn't have to be a report? We would hope that there would be a report under the safety of the minor, but it's not triggered in every case, we don't believe. In fact, to read it that way — The statute doesn't say that, in fact. Isn't it a better argument that it's not abuse? Well, abuse includes sexual — includes rape under the Idaho Code. It's up to the definition of abuse in the Child Protective Act. It already includes that, so we're a little bit precluded on that better argument. But the argument just has to be, both because of the constitutional and logistical arguments, that the Idaho Code can't mean that it is — that in every time any person has any reason to believe that any minor has engaged in any sexual contact, that there has been abuse and a report needs to be made. That just can't be the reading in the statute, and the — the — So if a grandparent is abusing her? I don't — actually, don't know the definition of parent, guardian, custodian. But the equitable statute doesn't say parent, guardian, or custodian, does it? 1619 doesn't say that. It just says abuse. Yeah. Yes. But if you read it the way the State's saying it, it would not only include a grandparent or anyone along those lines. And I — I mean, the way I believe health care professionals operate in this sense is that they make a determination about the interest of the minor and about whether or not there's a reason to report. But to read it the way the State does raises enormous problems. On the medical emergency exception, they said that the State interest was the minors protecting the minors' health. If the State interests were really protecting the minors' health, they would do what every other State does in this instance, which is completely waive the requirement so that the minors who need care the most would get the care that they need. And as Aramiki, the physicians who actually — and other providers who see and treat minors in this situation say, this provision is a significant deterrent to those minors who need health care the most. The State also argued that — Dr. Fredrickson testified that minors would get care. On the — on page 91 of the plaintiff's excerpt of records, she says, If a minor is in a medical emergency situation and is socially in a tenuous or chaotic family situation, she may choose to preserve her confidentiality and turn away from medical advice, therefore putting her life in more jeopardy. And the testimony was not that she would be in the hospital unable to leave to be able to get a court order. The testimony were on conditions like an ectopic pregnancy or the onset of help syndrome would be that she would feel fine if she saw the doctor for this advice. The doctor would not be able to chain her into the office and call the court. She would be able to walk right off the door. And the — whether or not if she never comes in for care or is able to get the care in the first place, the State's interest hadn't — has not been served. And with respect to their need for post-abortion care, there was no testimony that minors wouldn't get this care. In fact, the doctors testified that it's just not always the parent who's in the position to provide the care, and this leaves them with no choice. And the last thing on that that's the most important about that provision is whether or not the State interest comes, it has exactly the same problem for abused and neglected minors as the Supreme Court struck down the law in Hodgson. The State says it's notice, not consent. They say it's before and not after the notice comes. In Hodgson, the Supreme Court struck down a parental notice law that had a waiver for abused and neglected minors because they said — and it's Justice O'Connor's opinion. It's a very divided opinion. Her opinion carries the day. She's the swing vote on it. And she says their reluctance to report makes the bypass and the physician's — the notification that will come to a parent as a result of that report makes the bypass for abused and neglected minors less than effectual. And here, even the exception to the post-emergency notice for those minors who have been abused and neglected will definitely breach their confidentiality, and it definitely breaches their confidentiality, because the statute requires that a petition be filed that makes a code — a reference to a code section called consent for minors' abortions. So there's no question that a parent will receive — and the parent, by law, has to receive that petition. So a parent, even an abused minor, would receive a petition that says your child's had an abortion. Thank you for your argument. Thank both sides for their arguments. They're really very helpful. And the case just argued will be submitted for decision, and the court will stand adjourned.
judges: Hawkins, McKeown, Berzon